# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ARNOLD J. HILL,
U.S. Federal Correctional Institution Butner Low
Old North Carolina Highway 75
Butner, NC 27509

          Plaintiff,

      v.                            1:16-cv-1476

UNITED STATES PAROLE COMMISSION,
J. PATRICIA WILSON SMOOT,               COMPLAINT
PATRICIA K. CUSHWA,
CHARLES T. MASSARONE,
United States Parole Commissioners,
U.S. Parole Commission
90 K Street, N.E.
Third Floor
Washington, DC 20530

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INTRODUCTION

1.        Individuals convicted of criminal offenses under the Criminal Code of the District of Columbia ("D.C. Code offenders") are subject to parole grant decisions by a federal agency but are not afforded the same procedural rights as individuals convicted of criminal offenses under federal laws ("U.S. Code offenders").

2.        As a result, D.C. Code offenders are subject to the decisions of the United States Parole Commission ("USPC" or "Commission"), but are unable to challenge these decisions through administrative appeals.  Their U.S. Code offender counterparts, on the other hand, are authorized by statute to appeal parole decisions made by the USPC.

3.        Plaintiff Arnold J. Hill has suffered the consequences of this disparate procedural treatment.  Mr. Hill is a D.C. Code offender confined at the United States Federal Correctional Institution Butner Low in Butner, North Carolina.  He was sentenced in 1989 in D.C. Superior Court to a term of 20 years to life with the possibility of parole.  The USPC granted Mr. Hill parole in January 2012 and scheduled his release for September 2012.

4.        The USPC subsequently scheduled a special rehearing to consider whether Mr. Hill's parole should be rescinded in light of "new and significant adverse information," without providing him with notice of the form or substance of the "new" information.  At the rehearing, the USPC heard the testimony of the victim's family against Mr. Hill.  Based solely on this testimony—testimony that related only to evidence already within the USPC's knowledge and that was not "new"—the USPC rescinded Mr. Hill's grant of parole and set aside any rehearing for a period of five full years (departing from the standard one-year set-off for rehearing). Mr. Hill sought a rehearing in the intervening period but was denied.  As a result, Mr. Hill remains in prison, waiting for his delayed rehearing without the opportunity to appeal.

5.        The USPC's pattern and practice of allowing U.S. Code offenders, but not D.C. Code offenders, to appeal parole decisions amounts to disparate procedural treatment between D.C. Code offenders and U.S. Code offenders.

1

6.     As a D.C. Code offender, Mr. Hill is treated differently than U.S. Code offenders because he is denied the opportunity to appeal his parole decision.  Further, by not providing Mr. Hill with notice in advance of his reconsideration hearing of the form and substance of the victim's family's testimony and by relying solely on this testimony (which did not provide any new information), the USPC violated Mr. Hill's substantive and procedural due process rights in rescinding his parole.

7.     Moreover, because new and significant adverse information was neither presented at Mr. Hill's reconsideration hearing nor considered by the USPC in its rescission, the USPC's rescission of parole was arbitrary and capricious.  The USPC's decision runs counter to its own policies and regulations, as the Commissioners had already found Mr. Hill to be a suitable parole candidate and granted Mr. Hill parole.

8.     By denying parole upon reconsideration as well as by denying Mr. Hill an opportunity to appeal this erroneous decision, the USPC has infringed upon Mr. Hill's substantive and procedural due process and equal protection rights in violation of 42 U.S.C. § 1983, the Fifth Amendment to the U.S. Constitution, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

## PARTIES

### A.     Plaintiff

9.     Mr. Hill is a D.C. Code offender serving a sentence for a crime he committed more than 27 years ago.  He is now 63 years old.  Mr. Hill is currently being held at the low-security United States Federal Correctional Institution Butner Low at Old North Carolina Highway 75, Butner, North Carolina 27509.

### B.     Defendants

10.     Defendant the USPC is a federal agency located in the District of Columbia. The USPC exercises authority over D.C. Code offenders pursuant to Section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, 111 Stat. 251, 745–46.  The USPC thus has "sole authority to grant parole, and to establish the conditions of

release, for all District of Columbia Code prisoners who are serving sentences for felony offenses, and who are eligible for parole by statute." 28 C.F.R. § 2.70(b).

11.     Defendant J. Patricia Wilson Smoot currently serves as Chairman of the USPC. Commissioner Smoot has served on the USPC since September 16, 2010 and was named as Chairman on May 29, 2015.  Commissioner Smoot is being named in her official capacity as Chairman of the USPC, which is located in Washington, D.C., and she therefore resides for official purposes in the District of Columbia.

12.     Defendant Patricia K. Cushwa currently serves as a Commissioner of the USPC, a position she has held since November 20, 2004.  Commissioner Cushwa is being named in her official capacity as Commissioner of the USPC, which is located in Washington, D.C., and she therefore resides for official purposes in the District of Columbia.

13.     Defendant Charles T. Massarone currently serves as a Commissioner of the USPC, a position he has held since May 24, 2012.  Commissioner Massarone is being named in his official capacity as Commissioner of the USPC, which is located in Washington, D.C., and he therefore resides for official purposes in the District of Columbia.

## SUBJECT MATTER JURISDICTION AND VENUE

14.     Mr. Hill's claim arises under 28 U.S.C. §§ 1331 and 1343(a)(3), 42 U.S.C. § 1983, the Fifth Amendment to the U.S. Constitution, and the APA, 5 U.S.C. § 702. Therefore, this Court has subject matter jurisdiction over Mr. Hill's claims under 28 U.S.C. §§ 1331 and 1343(a)(3).

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as a substantial number of the events giving rise to this action occurred in this District, including that the Commissioners, who were solely responsible for adopting or rejecting the recommendations of Mr. Hill's hearing examiners, made final, nonappealable decisions regarding whether to grant Mr. Hill parole or to rescind that decision in this District.

## PERSONAL JURISDICTION

16.     Exercise of the Court's jurisdiction over Defendants Smoot, Cushwa, and Massarone is reasonable and proper in this District because they conduct extensive business activities on behalf of the USPC within the District.  Defendants are Commissioners of the USPC, which is located and does business in the District of Columbia.

17.     Exercise of the Court's jurisdiction over the USPC is reasonable and proper in this District because the USPC is located and does business in the District of Columbia.

## FACTUAL BASIS FOR CLAIMS

**A.      Framework For Parole Determinations For D.C. Code Offenders.**

18.     Until 1998, individuals convicted of felonies under D.C. law were imprisoned in the Lorton Reformatory ("Lorton") and it was the responsibility of the D.C. Parole Board to make parole determinations for such D.C. Code offenders.  In 1997, Congress closed the Lorton Reformatory effective in 2001, directed that D.C. Code offenders convicted of felonies be sent to federal prisons around the country, abolished the D.C. Parole Board, and transferred to the USPC the responsibility for paroling D.C. Code offenders pursuant to the parole laws and regulations of the District of Columbia.

19.     Today, the USPC is the entity solely responsible for granting or denying parole to D.C. Code and U.S. Code offenders.

20.     The substantive parole guidelines applicable to D.C. Code offenders depend on the guidelines in effect at the time the offense was committed.  In 2009, the USPC issued a regulation requiring it to apply guidelines adopted by the D.C. Parole Board in 1987 ("1987 Guidelines") and the policy guidelines adopted by the D.C. Parole Board in 1991 ("1991 Policy Guidelines") when making parole determinations for D.C. Code offenders, like Mr. Hill, who committed offenses between March 4, 1985 and August 4, 1998.

21.     While the USPC follows applicable *substantive* guidelines established by the former D.C. Parole Board for D.C. Code offenders like Mr. Hill, it is permitted to establish *procedural* rules and regulations governing the parole determination for D.C. Code and U.S.

4

Code offenders.  In that vein, in addition to the 1987 Guidelines and 1991 Policy Guidelines, the USPC has promulgated other rules and regulations governing its decisionmaking for U.S. *and* D.C. Code offenders ("USPC Regulations").

22.     Generally, when a D.C. Code offender becomes eligible for parole consideration, there is a presumption that the prisoner has, by that time, been penalized for the crime committed.  This presumption underlies the policies and procedures of the 1987 Guidelines. The USPC's role in granting parole is to assess whether the prisoner remains a risk to society.

23.     The 1987 Guidelines direct the USPC to employ a "Salient Factor Score" ("SFS") calculation to determine whether a particular prisoner is presumed suitable for parole. A prisoner's numerical SFS places the prisoner into one of four risk categories: low risk, fair risk, moderate risk, or high risk.  The USPC then assigns a point value according to the prisoner's level of risk subject to a "Point Assessment Grid": 0 for low risk, 1 for fair risk, 2 for moderate risk, and 3 for high risk.

24.     The USPC may then adjust that score up or down based on various factors— including the nature of the offense and the prisoner's behavior and rehabilitation while in prison—to determine the prisoner's suitability for parole.  The resulting final score, the prisoner's Point Assignment Grid Score ("Grid Score"), can range from 0 to 5.

25.     If a prisoner's Grid Score is between 0 and 2 at an initial hearing, the prisoner is presumed eligible for parole by the USPC.  Subsequent to the initial hearing, a prisoner is presumed eligible for parole at a rehearing if his grid score is between 0 and 3.

26.     The USPC may depart from the presumption set by the prisoner's Grid Score and deny or grant parole to a prisoner based on specified factors, including whether the prisoner has previously flouted parole guidelines, the prisoner's behavior while incarcerated, the severity of the prisoner's offense or prior record, and the prisoner's history with alcohol or drug abuse.

27.     After the USPC has decided to grant a prisoner parole, it may only reverse that determination if the prisoner commits a new criminal act or violates the institution's rules prior to release, violates his terms of parole after release, or if it determines, upon receipt of new and

significant adverse information at a special reconsideration hearing, that the prisoner is no longer suitable for parole.

28.     If the USPC decides to hold a special reconsideration hearing to consider new and significant adverse information, the prisoner is entitled to review that information prior to the hearing, to be represented by a person of his or her choice at the hearing, and to receive notice of a decision within 21 days of the hearing either confirming or rescinding the USPC's grant of parole.

29.     Federal prisoners are permitted to appeal denials of parole to the National Appeals Board.  18 U.S.C. § 4215.  Under 28 C.F.R. § 2.26, a U.S. Code offender or parolee convicted of violating federal law may appeal "to the National Appeals Board . . . any decision to grant . . . rescind, deny or revoke parole."  The bases on which such U.S. Code offenders may appeal their parole decisions relate to the incorrect application of a prisoner's severity rating, SFS, time in custody, mitigating circumstances, erroneous information, incorrect procedure, or other compelling reasons.

30.     D.C. Code offenders in federal prison, however, do not have any comparable procedural right to appeal their parole decisions made by the USPC.  Specifically, the Commission's rule-makings explicitly single out D.C. Code offenders who receive parole determinations under the 1987 Guidelines as not having a right to appeal parole decisions made by the USPC.

**B.     Mr. Hill Is Granted Parole In January 2012.**

31.     In 1989, Mr. Hill was convicted under the D.C. Code of first degree murder while armed for the murder of his ex-girlfriend, Shelby Teresa Duncan.  Mr. Hill was sentenced to a term of 20 years to life with possibility of parole.  He was initially sent to Lorton, and then subsequently transferred to federal prison after Lorton was closed.

32.     Mr. Hill's first parole hearing took place on July 18, 2007—18 years after his initial conviction.  In the nearly twenty-year period of his incarceration, Mr. Hill had completed numerous rehabilitation courses, received consistently good evaluations for his work

assignments, and studied in an effort to obtain his GED.  Mr. Hill was cited for only one

disciplinary infraction in October 2005, after he attempted to physically defuse a brawl involving

other inmates.

33.     Under substantive guidelines drafted by the USPC (which were different from

the 1987 Guidelines and erroneously applied to D.C. Code offenders like Mr. Hill at the time of

his first parole hearing), Mr. Hill was denied parole in 2007.  Once it was determined that the

1987 Guidelines properly applied to Mr. Hill, he received a rehearing under the 1987 Guidelines,

and all subsequent rehearings took place under those substantive Guidelines.

34.     Mr. Hill's first parole rehearing took place on November 9, 2009.  In his pre-

hearing assessment, Mr. Hill received a Grid Score of 1.  His pre-hearing report also documented

that Mr. Hill suffered from high blood pressure, hyperstasis in the lower extremities, and

diabetes.

35.     At his rehearing, Mr. Hill's Staff Representative, Dr. Jason Engel, testified that

Mr. Hill had received positive feedback regarding his participation in the 500-hour Residential

Drug Abuse Program (RDAP) and had taken on significant leadership responsibilities within the

program.  One of Mr. Hill's former supervisors at a prison work program also drafted a letter

supporting Mr. Hill's release on parole.

36.     As a result of the support and feedback received by Mr. Hill, the Hearing

Examiner, Lynne E. Jenkins, recommended to the USPC that Mr. Hill was suitable for parole,

but counseled that Mr. Hill complete the RDAP and GED programs before the USPC granted

parole.  The USPC subsequently affirmed Ms. Jenkins's recommendation and denied Mr. Hill

parole pending his completion of the RDAP and GED programs.

37.     Mr. Hill's second parole rehearing took place one year later, on November 3,

2010.  Ms. Jenkins again served as Mr. Hill's Hearing Examiner.  In his pre-hearing assessment,

Mr. Hill received a Grid Score of 0—the lowest possible risk score—indicating that he was a

suitable candidate for parole.  The pre-hearing assessment also detailed Mr. Hill's deteriorating

physical condition, noting that he now used a wheelchair or walker to move around.  At the

hearing, Dr. Engel testified that Mr. Hill had completed the RDAP program and was continuing to work toward obtaining a GED.

38.     Relying on Mr. Hill's completion of the RDAP program and Dr. Engel's testimony about Mr. Hill's commitment to drug treatment, Ms. Jenkins recommended granting parole.  The USPC overruled Ms. Jenkins's recommendation and denied Mr. Hill parole.

39.     Mr. Hill's third parole rehearing took place—again one year later—on November 9, 2011.  Again, Ms. Jenkins was Mr. Hill's Hearing Examiner.  In his pre-hearing assessment, Mr. Hill again received a Grid Score of 0, indicating that he was a suitable candidate for parole.  At his hearing, his case manager, Beth Cupp, testified that Mr. Hill was still working toward obtaining his GED, but noted a severe hearing impairment that made progress difficult.

40.     Relying on Mr. Hill's continued excellent behavior while serving his sentence and his efforts to obtain his GED, and noting that she had recommended parole after Mr. Hill's previous rehearing, Ms. Jenkins again recommended that Mr. Hill be granted parole.  In particular, Ms. Jenkins noted that "the drug program coordinator spoke very highly about his participation in the program and his willingness to take on all the issues that w[ere] addressed in the program."  Ms. Jenkins also took into account that Mr. Hill "continue[d] to work very hard toward" obtaining his GED, despite his hearing impairment.  Taken together, these considerations caused Ms. Jenkins to recommend that Mr. Hill be granted parole effective nine months later.  The USPC affirmed Ms. Jenkins's recommendation on January 11, 2012, and *granted* him parole.  His release was conditioned, as it usually is, on the approval of a release plan.

41.     Mr. Hill subsequently contacted his sister to determine whether he would be able to live with her in the home they jointly inherited from their mother.  She confirmed that he would be welcome in their family home.  Mr. Hill communicated this release plan to the Bureau of Prisons, and began making arrangements for his release.

8

**C.      The USPC Reopens Mr. Hill's Parole Case And Rescinds Mr. Hill's Grant Of Parole Based On No New Evidence.**

42.      Approximately two weeks later, in February 2012, the USPC notified Mr. Hill that his case was being reopened for a special reconsideration hearing to consider "new adverse information" pursuant to 28 C.F.R. § 2.28(f).  The notice did not include any details about the form, nature, or substance of the new information.  In fact, Mr. Hill was not informed why a reconsideration hearing was being scheduled, nor what the consequences of such a reconsideration hearing could be.

43.      At Mr. Hill's special rehearing, the victim's daughter and sister testified to the impact of Mr. Hill's original offense on their family and expressed strong opposition to Mr. Hill's parole, citing their fear for their own safety if he were to be released into their community, despite the fact that Mr. Hill was 62 years old at the time and physically impaired. They also demanded an explanation and response from Mr. Hill regarding his motives for the original offense.  Mr. Hill was not afforded prior notice of the testimony that would be offered against him or given an opportunity to prepare responses to it.

44.      The testimony of the victim's sister and daughter, although emotional, did not provide any new evidence concerning Mr. Hill's suitability for parole.  Instead, the testimony recounted the circumstances of the original offense and their impact on the victim's family— information that was known to the corrections department since *before* his original sentencing because it was included in Mr. Hill's Pre-Sentencing Report.

45.      Because Mr. Hill was not aware, prior to the hearing, that the victim's sister and daughter would appear at the special rehearing and express opposition to his release in the same county in Maryland in which they and Mr. Hill's sister live, Mr. Hill was not prepared to suggest alternative arrangements as part of his release plan.  Nor was he able to prepare a statement to address the victim's family members.  Adequate notice of the nature of the "new" and adverse information would have provided Mr. Hill with the opportunity to provide alternative release plans and prepare sufficient responses that he could have presented at the special hearing.

9

Ultimately, Mr. Hill expressed remorse for having committed the original offense, citing his battle with PCP, heroin, and crack at the time of his offense.

46.     Mr. Hill's new Hearing Examiner, Mark Tanner, explained on the record that he was dissatisfied with Mr. Hill's explanation and response during the special rehearing.  Due to his perception that there was no "remorse in [Mr. Hill's] body language or in [his] words" and "tak[ing] into consideration . . . the victim input" testimony, Mr. Tanner recommended that the USPC rescind Mr. Hill's parole and set his next rehearing for 60 months in the future—as opposed to 12 months, the standard rehearing schedule which Mr. Hill had always previously been afforded.

47.     Hearing Examiner Tanner cited no evidence other than the circumstances of Mr. Hill's original offense to support his recommendation of rescission and for the unusually long delay after which Mr. Hill's next rehearing was set.  In particular, Mr. Tanner cited his belief that Mr. Hill's disregard for the victim and the safety of her children made Mr. Hill a parole risk—a belief that was not informed by any new information presented at Mr. Hill's hearing, but rather was based on events that had occurred more than 20 years before.  The USPC subsequently affirmed Mr. Tanner's recommendation, adopted Mr. Tanner's language in full, and rescinded its earlier grant of parole to Mr. Hill—despite the fact that Mr. Hill was considered an exemplary prisoner whose mobility and health were both severely impaired.

**D.      The USPC Fails To Provide Mr. Hill With An Opportunity To Appeal Its Decision To Rescind Parole.**

48.     On August 29, 2012, Mr. Hill was issued a Notice of Action from the USPC, rescinding his grant of parole and continuing his rehearing until July 2017—60 months after the date of his reopened hearing.   Mr. Hill was assigned a final Grid Score of 0, indicating that he was suitable for parole.  However, the USPC informed Mr. Hill that parole was rescinded and a rehearing within 12 months was denied as a result of the victim's family's statements concerning the severity of Mr. Hill's original offense.

49.     The USPC also stated in its Notice of Action that its decision was not appealable.

50.     On September 30, 2015, Mr. Hill, through counsel, issued a written request via certified mail to Defendant Smoot to reopen his case in order to consider, pursuant to 28 C.F.R. § 2.28(a), "new and significant information favorable to the prisoner" concerning the inadequate notice he received in relation to his prior rehearing and his recently revised release plans. Neither Defendant Smoot nor the USPC responded to Mr. Hill's written request.

51.     On January 12, 2016, Mr. Hill again, through counsel, sent a letter via certified mail to Defendant Smoot, advising her that, in light of the Commission's lack of response to his request of September 30, he intended to seek relief in federal court under the Equal Protection and Due Process Clauses of the U.S. Constitution and under the APA.

52.     On February 4, 2016, and without explanation, the Commission issued a written denial of Mr. Hill's request to reopen his hearing.

**E.     Mr. Hill Has Suffered And Continues To Suffer Harm Resulting From His Continued Incarceration Due To The USPC's Erroneous Decision To Rescind Parole And Denial Of An Opportunity To Appeal The USPC's Decisions.**

53.     As a result of Mr. Hill's lack of opportunity to appeal, Mr. Hill has continued to be detained in the Butner Low Security federal correctional facility without opportunity to challenge the USPC's flawed decision to rescind his parole.

54.     While incarcerated, Mr. Hill has surpassed the Commission's standards for suitability for parole.  Mr. Hill's institutional record has been exemplary:  he has not used drugs or alcohol in more than 20 years and has not had even one disciplinary infraction in more than a decade.  He is also a hardworking and diligent individual, successfully engaging in most of the transformative prison programming available to him, including not only a comprehensive 500-hour drug abuse program and victim impact and anger management classes, but also life-skills-based woodworking and sewing classes.  Mr. Hill also regularly attends Alcoholics Anonymous and Narcotics Anonymous meetings.

11

55.     During the time Mr. Hill has been incarcerated, Mr. Hill has suffered significant losses in his family.  While waiting for his parole, both Mr. Hill's mother and wife have died.  In addition, his health continues to deteriorate.

56.     In or about November 2015, Mr. Hill was sent to solitary confinement—without notice or written explanation—in connection with the prison's administrative reclassification process.  Mr. Hill spent approximately one week in solitary confinement before being returned to the Butner Low Security facility in or about December 2015.  Mr. Hill has suffered severe emotional and psychological distress as a result of his solitary confinement.

57.     Mr. Hill continues to be incarcerated at the Butner Low Security facility to this day, awaiting his next parole hearing in 2017, five years after his last rehearing.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Violations of the Equal Protection Clause of the Fifth Amendment and
Pursuant to 42 U.S.C. § 1983)**
(As against Defendants Smoot, Cushwa, and Massarone)

58.     Mr. Hill realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

59.     At all relevant times, Mr. Hill has been a person within the meaning of 42 U.S.C. § 1983 and has been detained at a federal prison facility, and subject to decisions made by the Defendants as Commissioners of the USPC.

60.     At all relevant times, each Defendant has been a person within the meaning of 42 U.S.C. § 1983, has served as a Commissioner at the USPC, and has discharged their duties pursuant to the rules and regulations set forth by the USPC, substantive D.C. parole rules and guidelines as to D.C. Code offenders, and relevant statutes.

61.     Under 18 U.S.C. § 4215, U.S. Code offenders may submit a written appeal within 30 days of denial of parole.

62.     Under 28 C.F.R. § 2.80(o), parole denials made to D.C. Code offenders considered under the 1987 Guidelines are not appealable.  D.C. Code offenders like Mr. Hill are unable to appeal any USPC decision denying them parole.

63.     At all relevant times, Defendants knowingly applied the relevant guidelines to their decisions denying D.C. Code offenders the ability to appeal denials of parole.

64.     D.C. Code offenders cannot appeal USPC parole decisions to any administrative adjudicatory body, while U.S. Code offenders can appeal USPC parole decisions to the National Appeals Board.  Thus, Mr. Hill, as a D.C. Code offender, is treated differently than U.S. Code offenders because he was denied the opportunity to appeal his parole decision.  In fact, Mr. Hill receives disparate procedural treatment even when compared with individuals whose offense was committed in the same jurisdiction as Mr. Hill (*i.e.*, the District of Columbia) but who were convicted under federal rather than D.C. law.

65.     The USPC's pattern and practice of allowing U.S. Code offenders to appeal parole decisions, but prohibiting D.C. Code offenders from appealing parole decisions, leads to disparate and unequal procedural treatment between D.C. Code offenders and U.S. Code offenders that has no substantive or other justification.

66.     This denial of equal procedural treatment creates a barrier to D.C. Code offenders, like Mr. Hill, from obtaining an important benefit to which U.S. Code offenders have access. Mr. Hill, unlike his federal counterparts, continues to be held in prison with no opportunity to appeal the USPC's denial of parole, and is thus forced to wait an additional 60 months from his last parole hearing for another hearing, which may not result in his receiving parole.  Therefore, Mr. Hill faces the possible penalty of being imprisoned longer than he otherwise would have if he were a U.S. Code offender.  The inability of Mr. Hill to appeal an erroneous parole decision by the USPC is the direct result of Defendants' denial of equal treatment to D.C. Code offenders.

67.     Mr. Hill's continued erroneous incarceration resulting from the USPC's denial of parole without opportunity to appeal is a direct, proximate, and reasonably foreseeable result of the Defendants' disparate procedural treatment of him and other D.C. Code offenders.  This

13

significant and unexplained unequal treatment violates the Equal Protection Clause of the Fifth

Amendment of the U.S. Constitution, entitling him to relief under 42 U.S.C. § 1983 and under 28

U.S.C. § 1331. Mr. Hill has been and will continue to be injured throughout the period of his

continued incarceration without opportunity to appeal his denial of parole.

## SECOND CLAIM FOR RELIEF
### (Violations of Substantive and Procedural Protections of the Due Process Clause of the Fifth Amendment and Pursuant to 42 U.S.C. § 1983)
(As against Defendants Smoot, Cushwa, and Massarone)

68.     Mr. Hill realleges and incorporates herein by reference each and every foregoing

paragraph of this Complaint as if set forth in full.

69.     The Defendants have unlawfully violated Mr. Hill's substantive and procedural

due process rights by rescinding his parole.

70.     By not providing Mr. Hill in advance of his reconsideration hearing the form and

substance of the victim's family's testimony, the USPC failed to provide sufficient notice

reasonably calculated to inform Mr. Hill of the nature of the reconsideration hearing.

71.     Because Mr. Hill was not made aware of the substance of the victim's family's

testimony—or that the victim's family would be testifying at all—Mr. Hill was not adequately

informed of the importance of seeking legal representation at the hearing. Moreover, Mr. Hill

was not provided an opportunity to prepare his testimony and rebuttals in light of the arguments

against him, nor was he able to secure possible alternative release plans in response to the

victim's family's newly raised concern.

72.     As a direct and proximate result of the Defendants' failure to provide Mr. Hill

with adequate notice of the form and substance of the victim's family's testimony, the USPC

prevented Mr. Hill from effectively preparing for his reconsideration hearing—or countering the

"new" evidence presented—which resulted in a rescission of his parole. Mr. Hill continues to be

incarcerated as a result of the USPC's erroneous decision, and has been and will continue to be

injured throughout the period of his continued incarceration.

14

73.     The reasons cited by the USPC in rescinding Mr. Hill's parole at his reconsideration hearing failed to justify that rescission.

74.     Because new and adverse information was neither presented at Mr. Hill's reconsideration hearing nor considered by the USPC in its denial, the USPC's rescission of parole was arbitrary and unreasonable, particularly in light of its previous decision to grant parole.

75.     As a direct and proximate result of the Defendants' initial grant of parole and subsequent rescission based solely upon information already available to the USPC, Defendants infringed Mr. Hill's liberty interests.

76.     In addition, Defendants have failed to provide adequate appeal rights for D.C. Code offenders like Mr. Hill.  As a result, Mr. Hill was not provided an adequate opportunity to appeal the Commission's erroneous decisions to deny him parole.

77.     As a direct and proximate result of the Defendants' failure to provide Mr. Hill with adequate procedures to appeal parole decisions, the USPC has prejudiced Mr. Hill.  Mr. Hill continues to be incarcerated as a result of the USPC's failure to provide adequate procedures, and has been and will continue to be injured throughout the period of his continued incarceration.

78.     As a result, Defendants have infringed Mr. Hill's liberty interests in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution, entitling him to relief under 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

## THIRD CLAIM FOR RELIEF
### (Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*)
(As against Defendant USPC and Defendants Smoot, Cushwa, and Massarone)

79.      Mr. Hill realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

80.     The failure by Defendants the USPC, Smoot, Cushwa, and Massarone to notify Mr. Hill of the form, nature, and substance of his reconsideration hearing, and their failure to rely on new and significant adverse information in rescinding Mr. Hill's parole are violations of the USPC's internal regulations and its governing statute.

81.     The rescission of Mr. Hill's parole following his reconsideration hearing is a direct, proximate, and foreseeable result of Defendants' arbitrary and capricious decisionmaking, in violation of the APA.

82.     Mr. Hill's continued erroneous incarceration resulting from Defendants' rescission of parole without opportunity to appeal is also a direct, proximate, and reasonably foreseeable result of Defendants' arbitrary and capricious decisionmaking, in violation of the APA.

83.     Defendants' disparate treatment of D.C. Code and U.S. Code offenders, which denies Mr. Hill the ability to appeal its wrongful decision, is unconstitutional and therefore violates the APA.

## PRAYER FOR RELIEF

Based on the foregoing, plaintiff requests relief as follows:

1.     Equitable relief as appropriate pursuant to applicable law, including but not limited to reversing the August 29, 2012 Notice of Action rescinding Mr. Hill's grant of parole and reinstating Mr. Hill's parole or, in the alternative, granting Mr. Hill a parole rehearing at the earliest possible date and a right to appeal;

2.     Relief in the form of a declaratory judgment that D.C. Code offenders are entitled to the same appeal rights as U.S. Code offenders;

3.     For Mr. Hill's reasonable attorneys' fees and costs according to 42 U.S.C. § 1988(b); and

4.     Such other legal and equitable relief as the Court may deem Mr. Hill is entitled to receive.

DATED: July 19, 2016

By: /s/ Chantale Fiebig

Chantale Fiebig (D.C. Bar No. 487671)
Sripriya Narasimhan (D.C. Bar No. 1029549)
Laura Mumm (D.C. Bar No. 1032245)

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  202.955.8500

Elliot M. Mincberg (D.C. Bar No. 941575)
Deborah Golden (D.C. Bar No. 470578)

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL
RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, DC 20036
Telephone:  202.319.1000

*Attorneys for Plaintiff Arnold J. Hill*